**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **EVELYN GRIMES** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | Civil No. PJM 05-2805 |
| **v.** | * | |
| | * | |
| **DARREL MILLER, et al.** | * | |
| | * | |
| **Defendants**. | * | |

<u>**OPINION**</u>

Evelyn Grimes has sued Darrel Miller and the Town of Capitol Heights, Maryland as a result of her removal as a member of the Capitol Heights Town Council.  Miller and the Town have filed a Motion to Dismiss the action.  For the reasons set forth below, the Court will GRANT the Motion.

**I.**

On August 8, 2005, Grimes, who was an elected member of the Council, was removed from her seat by vote of the Council.  Although her Complaint could use some refinement, its basic thrust is that Defendants violated her due process rights.

Grimes alleges these facts:

On July 11, 2005, she and two other Councilwomen, Senora Ball and Bette Carroll, walked out of an Executive Session of the Council during which the Council was debating whether to terminate Town Administrator Daithi Htun.  Grimes alleges that she and her colleagues left in protest because they felt that Mayor Joyce Nixon and other Council members were treating Htun unfairly.  Thereafter, Nixon called meetings on July 14 and 18, 2005, but

1

failed to provide Grimes with notice of these meetings.  On July 22, 2005, Nixon notified Grimes

of another meeting scheduled for July 25, but Grimes informed Nixon that she could not attend.

Nixon then called a meeting for August 1, 2005, but again Grimes informed Nixon that she

would be unable to attend, this time because she would be on vacation.

On August 8, 2005, during a public hearing with Grimes in attendance, Councilman

Darrel Miller, the only individual Defendant named in Grimes's Complaint, stated that he had

obtained a legal opinion indicating that the Council was authorized to remove Grimes from her

seat because she had forfeited her office by missing three consecutive regularly scheduled

meetings.  Grimes maintains that Miller knew that no such opinion existed,[1]  but that he

nonetheless misled other Council members to believe that it did and urged them to vote to

remove Grimes from her seat.  As a result, Mayor Nixon and Councilman Ron Williams joined

Miller in voting to remove Grimes.  Grimes represents that the Town Charter states that during

the summer months only one regularly scheduled meeting shall be held per month.  Grimes also

claims that she did not miss three consecutive regularly scheduled meetings.

Grimes's Complaint is hardly a model of clarity and her theories of recovery are difficult

to discern.  It consists of four counts, all asserted against both Defendants.  Counts I and II of the

Complaint allege "Violation of Civil Rights and Conspiracy to Violate Civil Rights," and

"Negligent Hiring and Training," respectively.  These claims are based on the incidents

described above, i.e., Grimes's removal from the Council.  Count II appears to be a *Monell* claim

---

[1]      The Complaint is not altogether clear on this point.  Grimes alleges that Miller "had
actual knowledge that there was no such legal opinion."  She also alleges that Miller "knew [the
opinion] to be false."  As best the Court can tell, she is alleging that there was in fact a legal
opinion but that it did not justify her removal, and that Defendant Miller knew this.

against the Town (although Miller is also sued) for maintaining "policies or customs exhibiting deliberate indifference to the constitutional rights of persons in which caused the violation of Plaintiff's rights."  Count III, styled "Wrongful Trespass on Personal Property and Theft," alleges that on September 1, 2005, Defendants removed money from Grimes's bank account and that the Town has refused her coverage under its blanket liability insurance policy.  Count IV alleges a violation of the Maryland Open Meetings Act, in that Grimes has been denied access to Council meetings since August 8, 2005 and has been denied access to Town records.

Significantly this Court is not the first forum in which Grimes has sought relief for her alleged wrongful removal.  On August 17, 2005, pursuant to Section 205 of the Town of Capitol Heights Town Charter[2] and Maryland Rule 7-201 *et seq*., she filed a Petition for Judicial Review in the Circuit Court for Prince George's County, in which she sought to have the Council's ruling reversed.  She did not name Miller in that action, only Nixon, the Council, and the Town itself.  As here, however, she alleged violations of her due process rights and the Open Meetings Act.  When Grimes failed to file a brief in support of her Petition, Defendants moved to dismiss pursuant to Maryland Rule 7-207, which authorizes the circuit court to dismiss an action where a party fails to file or untimely files memoranda in support of the appeal.  Grimes also failed to oppose the motion to dismiss, such that on March 7, 2006 the Circuit Court dismissed her Petition with prejudice.  Grimes took no appeal from that decision.

A brief history of the litigation in this Court is also in order.  On October 13, 2005, Grimes filed her Complaint and moved for a temporary restraining order to restore her seat on

---

[2]      Section 205 of the Town Charter provides that "[t]he forfeiture of office may, within 10 days of the action, be appealed to the Circuit Court of Prince George's County, Maryland, by the official who forfeited office."

the Council.  On October 31, 2005, Defendants filed the instant Motion to Dismiss together with

an opposition to the Motion for Temporary Restraining Order.  On November 8, 2005, the Court

denied the Motion for Temporary Restraining Order and set a hearing on the Motion to Dismiss.

Several weeks before the hearing, which was scheduled for March 27, 2005, Defendants filed a

supplemental memorandum in support of their Motion to Dismiss, in which they argued that the

dismissal of Grimes's state court action was res judicata as to her claims in this Court.  Grimes

waited until after 11:00 p.m. on the night before the hearing to respond to this memorandum.

The Court heard argument on March 27, 2006 and took the matter under advisement.

## II.

The Court considers first whether Grimes's claims are barred by res judicata.[3]

To determine the preclusive effect *vel non* of the judgment of the Circuit Court for Prince

George's County, this Court must apply Maryland law.  *See Migra v. Warren City School Dist.*

*Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-

court judgment the same preclusive effect as would be given that judgment under the law of the

State in which the judgment was rendered.").  "Under Maryland law, the elements of res

judicata, or claim preclusion, are: (1) that the parties in the present litigation are the same or in

privity with the parties to the earlier dispute; (2) that the claim presented in the current action is

identical to the one determined in the prior adjudication; and, (3) that there has been a final

---

[3]    Although the Court considers matters outside the pleadings in making this determination,
it need not convert Defendants' Motion to Dismiss to one for summary judgment because the
Court is only taking judicial notice of facts from a prior judicial proceeding over which there are
no disputed issues of material fact.  *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

judgment on the merits." *Colandrea v. Wilde Lake Community Ass'n*, 761 A.2d 899, 910 (Md. 2000).

At first blush, these requirements appear to be satisfied in the present case.

First, the parties in this suit are the same as in the previous suit.  Although Miller was not named in the state court action, Grimes identified Miller in her pleadings and made arguments relative to his role in her removal.  Moreover, the same-parties requirement cannot be applied to bar Miller from invoking res judicata as a shield.  *See Tunnel/Hester J.V. v. Tunnel Elec. Constr. Co., Inc.*, 240 F. Supp. 2d 410, 413 (D. Md. 2002) ("The Maryland Court of Appeals has held that mutuality is not required to use res judicata as a shield.  As the court said, 'public policy against repetitive identical litigation, which underlies the rule of res judicata, applies here with logic and force to provide that [the party in the prior proceeding's] rights were satisfied by having had its day in court on an issue, and that it is not entitled to another day in court against a particular defendant on that issue.'" (quoting *Pat Perusse Realty Co. v. Lingo*, 238 A.2d 100, 106-08 (Md. 1968)).

Second, the "claim" in this action is identical to that presented in the state court action. Maryland employs the "transaction test" set forth in the Restatement (Second) of Judgments § 24 to determine whether claims are identical for res judicata purposes.  *Colandrea*, 761 A.2d at 908. As the comments accompanying § 24 explain:

> The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights.  The transaction is the basis of the litigative unit or entity which may not be split.

> Restatement (Second) of Judgments § 24 cmt. a.

5

The transaction at issue in both the state court case and this case is Grimes's removal from the Town Council. Thus, her "claim" in the state case is identical to that presented here.[4]

Third, there has been a final judgment on the merits in the state court action. On March 7, 2006, the Circuit Court dismissed Grimes's Petition "with prejudice." Under Maryland law, a dismissal with prejudice is an adjudication on the merits. *See Church v. Maryland*, 180 F. Supp. 2d 708, 748 (D. Md. 2002) (citations omitted). The Circuit Court's judgment is final because Grimes's motion for reconsideration of the March 7, 2006 Order was denied on May 9, 2006, and Grimes did not take an appeal.[5]

Despite the foregoing, as the Court noted at the March 27, 2006 hearing, claim preclusion remains problematic because in this suit Grimes seeks the remedy of money damages, a remedy

---

[4]     While Counts III and IV, which allege theft and violation of the Maryland Open Meetings Act, involve events that Grimes alleges occurred *after* her removal from the Council, they are part of the same "claim" for res judicata purposes because they are part of the same related series of events. *See* Restatement (Second) of Judgments § 24(2) ("What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.").

[5]     Defendants argue that Grimes had no right of appeal because the right to appeal in Maryland is wholly statutory, *see Lopez-Sanchez v. State*, 879 A.2d 965, 700-01 (2005), and § 12-302 of the Courts and Judicial Proceedings Article expressly limits the right to appeal in such actions, *see* Md. Code Ann., Cts. & Jud. Proc. § 12-302 ( "Unless a right to appeal is expressly granted by law, § 12-301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of the District court, an administrative agency, or a local legislative body."); *see also Healthcare Strategies v. Howard County Human Rights Comm'n*, 700 A.2d 278 (Md. Ct. Spec. App. 1997). While the apparent unavailability of appellate review is troublesome, *see* 18A Wright, Miller & Cooper, Federal Practice and Procedure § 4433, at 108-10 (2d ed. 2002), the Court need not reach this issue because, as the Court now explains, it is clear that an exception to the rule of res judicata applies.

unavailable to her in the state court action.  While Defendants argue that the unavailability of a damages remedy in the state court action is irrelevant, that is simply not so.  Section 26(1)(c) of the Restatement (Second) of Judgments provides that the ordinary rules of claim preclusion do not apply where "[t]he plaintiff was unable to...seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts…and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief."  In other words, "where a plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or statutory barriers, not by plaintiff's choice, a subsequent action for damages will not normally be barred by res judicata even where it arises from the same factual circumstances as the initial action." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also* 18 Federal Practice and Procedure § 4412, at 285 ("Claim preclusion is readily denied when the remedies sought in the second action could not have been sought in the first action, so long as there was good reason to maintain the first action in a court or in a form of proceeding that could not afford full relief.").

There is little doubt that the Circuit Court could not have awarded Grimes damages, a point Defendants appear to concede.[6]  Maryland Rule 7-209, which provides the possible dispositions for a petition for judicial review under Rule 7-201, does not mention damages.  *See* Md. R. 7-209 ("Unless otherwise provided by law, the court may dismiss the action for judicial review or may affirm, reverse, or modify the agency's order or action, remand the action to the agency for further

---

[6]     Whether the court could have awarded Grimes back-pay is a different matter, but for res judicata purposes a remedy of back-pay is different from the "moral" damages remedy that would be available in a § 1983 action.   Back-pay is generally viewed as an equitable remedy "that does not implicate the procedural and constitutional issues that a damage award does." *Reeb v. Ohio Dep't of Rehab. & Corr., Belmont Corr. Inst.*, 435 F.3d 639, 650 (6th Cir. 2006).

proceedings, or an appropriate combination of the above.").   Nor are damages recognized as a possible remedy in any of the other rules that govern appeals from administrative decisions in state court.

The Court of Special Appeals was confronted with a similar issue in *Esslinger v. Baltimore City*, 622 A.2d 774 (Md. Ct. Spec. App. 1993) (Motz, J.).   In *Esslinger*, the plaintiff appealed a decision of the Baltimore City Zoning Board to the Circuit Court for Baltimore City.   After the circuit court denied his appeal, the plaintiff filed a § 1983 action in the same court in which he sought compensatory and punitive damages.   On appeal, the Court of Special Appeals reversed.   While the appellate court concluded that the two actions involved the same "claim" under the Restatement's transaction test because they involved the same corpus of facts, it questioned whether preclusion would be appropriate if a damages remedy was not available in the first action:

> Both § 24 of the Restatement and the Court of Appeals in approving the transactional test set forth there...make it clear that "[e]quating claim with transaction" is "justified only when the parties have ample procedural means for fully developing the entire transaction in the one action going to the merits to which the plaintiff is ordinarily confined."
> ....
>
> Part and parcel of being afforded "ample procedural means" in an initial action...is...being afforded the opportunity to pursue all of one's *remedies* in that action.

*Id.* at 780-82 (citations omitted).

Accordingly, the court turned to the question of whether a damages remedy was available in the first action. Finding that it was not,[7] the court concluded that the § 1983 claim for damages was not precluded. *Id.* at 783.[8]

*Esslinger*'s rationale not only controls here; the Court fully embraces its good sense. In most cases, the successful appeal of an administrative decision affords the aggrieved party all the relief that he desires; the administrative decision is reversed or modified or remanded for further hearing.

---

[7]      Although *Esslinger* was decided prior to the amendment of the rules governing judicial review of administrative agency decisions, its conclusion that damages are not available in such actions is highly persuasive:

> We have not found even one reported opinion...in which a litigant was permitted to amend an administrative appeal to assert a claim for compensatory or punitive damages. A litigant asserting, or defending against, a claim for damages typically is permitted extensive discovery to build or defend his case; discovery is usually not available before a Maryland administrative agency and certainly was not available in this case. Yet in reviewing an administrative appeal the circuit court is usually, and was here, confined to reviewing the administrative decision for lack of substantial evidence or an error in law. Thus, almost always, and certainly here, the scope of judicial review of administrative decisions is narrow. Moreover, judicial review of an administrative decision is usually conducted by a judge alone; usually, there is no right to a trial by jury. Yet, the state and federal constitutions generally provide for a right to a trial by jury in claims for civil damages.

> For all these reasons, we think it highly unlikely that the Court of Appeals would hold that a Maryland court should, let alone must, permit a litigant to amend its administrative appeal from a Zoning Board decision to add a claim for money damages against the Zoning Board and various government officials.

*Esslinger*, 622 A.2d at 782-83.

[8]      Defendants' reliance on *Meehan v. Town of East Lyme*, 919 F.Supp. 80 (D. Conn. 1996), is misplaced. *Meehan* involved a § 1983 action filed on the heels of a fully litigated administrative appeal in state court. Although the court in *Meehan* stated that the plaintiff could not "attempt to relitigate the same claim under a new theory in order to obtain an alternate remedy," *id.* at 84, it never discussed what remedies were available in the appeal. *Id.* at 82. Moreover, to the extent that *Meehan* stands for the proposition that claim preclusion applies where remedies available in the second action are not available in the first, this Court respectfully disagrees with it and finds it contrary to the law of Maryland.

9

Having prevailed on the appeal, he might well stop there without seeking the additional remedy of damages in a second action. If, however, claim preclusion was potentially applicable in circumstances such as these, a litigant like Grimes would have a strong incentive to forgo an appeal and would instead immediately file an action for damages and injunctive relief. Instead of adjudication by way of a summary appeals procedure, the result would more likely be full-scale, protracted civil litigation. This would seem to conflict with two of the principal ends of claim preclusion -- conservation of judicial resources and efficiency.[9]

In view of the foregoing, the Court holds that none of Grimes's claims is barred by res judicata.[10]

## III.

Defendants also argue that Grimes fails to state claims upon which relief may be granted. The Court agrees.

Under Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a claim only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir. 1990). The court must accept as true all well-pleaded factual allegations in the complaint and must view them in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir. 1990). The court, however, is not obliged to

---

[9]      It is worth noting, as well, that the rule against claim preclusion in this situation does not necessarily give a party the chance to relitigate certain matters actually litigated and determined in the appeal. Presumably issue preclusion could apply. *See Esslinger*, 622 A.2d at 783-86.

[10]      To the extent that Grimes seeks injunctive relief in this suit, her claims might be precluded. *See id.* at 783. The Court need not reach this question since, as will be shown, her claims fail on the merits.

accept the plaintiff's legal conclusions based on the alleged facts.  *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979).  A complaint that fails to state a claim will be dismissed.  *Id.*

## A.

Grimes's Complaint stands or falls with Count I, her § 1983 claim, which is styled "Violation of Civil Rights and Conspiracy to Violate Civil Rights," and alleges violations of the Maryland Declaration of Rights, the Maryland Open Meetings Act, and unspecified constitutional rights.[11] The count incorporates by reference the factual allegations discussed above, namely the facts surrounding Grimes's removal from the Council on the basis of a dubious legal opinion cited by Miller.  Although Grimes does not specify which of her constitutional rights were violated, she does reference the Fourth and Fourteenth Amendments elsewhere in the Complaint.  Putting aside any Fourth Amendment claim,[12] the only constitutional claim that can be teased out of the Complaint is that Grimes's due process rights were violated when she was removed from the Council.

---

[11]     In her Opposition to Defendants' Motion, Grimes suggests that Count I also states a claim for fraudulent misrepresentation by Miller.  Even so, it would not change the result since Grimes cannot point to any deprivation of her constitutional rights.

[12]     In the Complaint, Grimes alleges "unreasonable seizure of her person," "[l]oss of her physical liberty," and "the use of excessive, unreasonable and unjustified force against her person."  She did not, however, press these claims at the March 27, 2006 hearing, and with good reason.  On a 12(b)(6) motion, a court need not accept "unsupported legal allegations, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events."  *Renn v. Bd. of Comm'rs*, 352 F. Supp. 2d 599, 602 (D. Md. 2005) (citations omitted).  Since Grimes's Fourth Amendment claims are legal conclusions unsupported by even the barest factual allegations, the Court will dismiss them without further discussion.

Giving Grimes the benefit of the doubt, this count is a claim that she was denied procedural due process when the Council removed her without proper justification and/or is a "stigma-plus" claim based on Defendant Miller's allegedly false remark *vis-a-vis* the challenged legal opinion. Either way, the claim fails.     To state a claim for a procedural due process violation, Grimes must allege that she was (1) deprived of a constitutionally protected interest in life, liberty, or property; (2) without due process of law.   *See Mallette v. Arlington County Employees Supplemental Retirement Sys. II*, 91 F.3d 630, 634 (4th Cir. 1996) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972); *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).   But Grimes possesses no such interest in her elected office.   Accordingly, she cannot satisfy the first requirement by alleging deprivation of a property interest:

> The decisions are numerous to the effect that public offices are mere agencies or trusts, and not property as such....[G]enerally speaking, the nature of the relation of a pubic officer to the public is inconsistent with either a property or a contract right.

*Taylor v. Beckham*, 178 U.S. 548, 577 (U.S. 1900).

*See also Snowden v. Hughes*, 321 U.S. 1, 7 (1944); *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005). Insofar as Grimes claims that she was deprived of procedural due process when she was removed from the Council, her claim fails.

Count I might also be read to allege a "stigma-plus" claim for deprivation of a liberty interest based on Miller's allegedly false statement regarding the legal opinion supporting Grimes's removal. The Complaint does not state exactly what Miller is supposed to have said.  At one point, it alleges that Miller "represented that he had an independent legal opinion which indicated that the Council was within their rights to remove Council Woman Grimes."  Later, it alleges that Miller "directed and instructed the Mayor, public and Council members on how to remove a member making

accusations against Plaintiff herein regarding a legal report the Council member Miller, knew to be false."

A "stigma-plus" claim requires Grimes to show: "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citations omitted). The Fourth Circuit has held that "[t]he type of communication that gives rise to a protected liberty interest implies 'the existence of serious character defects such as dishonesty or immorality.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 308 (4th Cir. 2006) (citing *Robertson v. Rogers*, 679 F.2d 1090, 1092 (4th Cir. 1982)). The Fourth Circuit has also, however, "distinguished statements that imply such serious character defects from statements that simply allege 'incompetence,'" the former being actionable under a "stigma-plus" theory, the latter not. [13] *Id.* As examples of the former, the Fourth Circuit has referenced charges of bribery, *see*

---

[13]     This appears to be the prevailing approach among the Circuits. *See, e.g., Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000) ("[A] plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance." (citation omitted)); *Buchholz v. Aldaya*, 210 F.3d 862, 866 (8th Cir. 2000) (same); *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 103 (1st Cir. 2002) (same); *Portman v. County of Santa Clara*, 995 F.2d 898, 907 (9th Cir. 1993) ("'Charges that carry the stigma of moral turpitude' such as dishonesty or immorality 'may implicate a liberty interest, but charges of incompetence or inability to get along with others do not.'" (citation omitted)); *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir. 1985) ("In interpreting the Supreme Court's holding in *Roth*, this court has held that a liberty interest is implicated when either (1) the individual's good name, reputation, honor or integrity are at stake by such charges as immorality, dishonesty, alcoholism, disloyalty, Communism or subversive acts; or (2) the state imposes a stigma or other disability on the individual which forecloses other opportunities. In *Adams* [*v. Walker*, 492 F.2d 1003, 1008 (7th Cir. 1974)], this court concluded that the state had not violated any liberty interest of a former chairman of the State Liquor Control Commission by dismissing him due to incompetence, neglect of duty, and malfeasance in office....Liberty is not infringed by a label of incompetence or a failure to meet a specific level of

*Boston v. Webb*, 783 F.2d 1163, 1165-66 (4th Cir. 1986), official dishonesty, *see Cox v. N. Va. Transp. Comm'n*, 551 F.2d 555, 557-58 (4th Cir. 1973), and fraud, *see McNeill v. Butz*, 480 F.2d 314, 319-20 (4th Cir. 1973). None of the facts alleged in Grimes's Complaint are *in pari materia* with the examples cited by the Fourth Circuit.

The false statement allegedly made by Miller does not implicate a serious character defect such as dishonesty or immorality. At best, he is supposed to have stated that he had a legal opinion that supported Grimes's removal, i.e., one which indicated that the Council had authority to remove a Council member who missed three consecutive regularly scheduled meetings without excuse. At worst, Miller's alleged statement suggested only that Grimes was neglecting the duties of her office. Quite simply, neither implication makes the grade. *See, e.g., Wojcik*, 300 F.3d at 103 ("Statements merely indicating the employee's improper or inadequate performance, incompetence, or *neglect of duty* are not sufficiently serious to trigger the liberty interest protected by the Constitution." (emphasis added)). Even if made and even if false, Miller's statement would not satisfy the first prong of the "stigma-plus" test.

As to Miller qua defendant, a "stigma-plus" claim also fails for the independent reason of legislative immunity.[14] Local legislators are entitled to absolute immunity from § 1983 liability for

---

management skills, which would only affect one's professional life and force one down a few notches in the professional hierarchy." (citations omitted)); *Mazaleski v. Treusdell*, 562 F.2d 701, 714 (D.C. Cir. 1977) ("Appellant was not terminated for dishonesty, for having committed a serious felony, for manifest racism, for serious mental illness, or for lack of 'intellectual ability, as distinguished from his performance . . . .' Whereas dismissals for these reasons have been held to affect liberty, dismissals for reasons similar to those given in appellant's case [substandard performance] have generally been deemed not to touch a liberty interest." (citations omitted)).

[14]     It does not appear that the same is true for the Town. *See Carver v. Foerster*, 102 F.3d 96, 103 (3d Cir. 1996).

"all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 53 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* "[A] legislative body's discipline of one of its members," has been identified by the Fourth Circuit as "a core legislative act" covered by the legislative privilege. *Whitener v. McWatters*, 112 F.3d 740, 741 (4th Cir. 1997).[15] Even a statement made "maliciously with the intent to publicly harm..." may be protected by the privilege, since it is "the nature of the act, rather than...the motive or intent of the official performing it," that determines whether an act is legislative. *Bogan*, 523 U.S. at 53.

There is no reason why a different result should obtain here.

Miller's statement was unquestionably made during the course of a Council meeting and related to the orderly functioning of the Council.

Overall, Count I fails to state a claim and must be dismissed.[16]

**B.**

---

[15]    In *Whitener*, the plaintiff, a member of the Loudoun County (Virginia) Board of Supervisors, was disciplined by the Board for making inappropriate comments to two of his fellow Board members. He filed a § 1983 action alleging violation of his due process rights, and the Board members moved to dismiss on the basis of legislative immunity. The district court concluded that the Board's action was within the scope of legislative immunity. The Fourth Circuit agreed. It noted that while discharging a local government employee is typically not a legislative act, a local legislative body disciplining one of its own is an entirely different matter. *Whitener*, 112 F.3d at 742. After reviewing the history of legislative immunity, the court held that this type of self-policing, which is part of the means by which a legislative body ensures its orderly functioning and "institutional integrity," falls squarely within the legislative privilege: "As legislative speech and voting is protected by absolute immunity, the exercise of self-disciplinary power is likewise protected." *Id.* at 744.

[16]    Given this conclusion, the Court need not reach Grimes's claim that there was a conspiracy to violate her constitutional rights.

With the fall of Count I, Count II, Grimes's *Monell* claim, also goes out.

Under *Monell v. Department of Social Services*, 436 U.S. 658, 690 (U.S. 1978), a municipality is only liable for the unconstitutional acts of its agents if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  In the case at bar, since there is no underlying unconstitutional act by one of the Town's agents on which to hang a *Monell* claim on, there is no *Monell* claim to pursue. [17]  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

## C.

This leaves Counts III and IV, Grimes's state-law claims, which allege "Wrongful Trespass on Personal Property and Theft" and Violation Maryland Open Meetings Act.  Having concluded

---

[17]     Even if Grimes sufficiently alleged a constitutional violation in Count I, the Court has doubts over whether her *Monell* claim is sufficiently plead.  She alleges the following: (1) "the Mayor and Capitol Heights Council developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons...which caused the violation of Plaintiff's rights"; (2) "It was the policy and/or custom of the Town to inadequately and improperly investigate citizen complaints of misconduct, and acts of misconduct were instead tolerated by the Mayor"; (3) "It was the policy and/or custom of the Town to inadequately supervise and train its Council members, including the Defendants, thereby failing to adequately discourage further constitutional violations on the part of Council members [and] the Town did not require appropriate in-service training or re-training of officers who were known to have engaged in misconduct"; and (4) the Town's "policies and customs demonstrated a deliberate indifference and willful indifference on the part of the policy makers of the Town to the constitutional rights of persons within the Town, and were the cause of the violations of Plaintiff's rights."  This hardly provides the Town notice of the claim against it.  It does not tell us anything other than that the Town had an official policy and/or custom of violating unspecified constitutional rights.  Though the Supreme Court rejected a heightened pleading standard for § 1983 municipal liability claims in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), Grimes's allegations are so bare and conclusory that they might not pass muster on a 12(b)(6) motion.  *See*, *e.g., Hughes v. City of Hartford*, 96 F. Supp. 2d 114, 117-18 (D. Conn. 2000).

that Grimes's federal claims must be dismissed, the Court declines to exercise jurisdiction over these claims.[18]  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).

## IV.

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.

A separate Order will be ENTERED.

 

 

_____/s/_____

**PETER J. MESSITTE**

**August 2, 2006**                    **UNITED STATES DISTRICT JUDGE**

---

[18]     This includes Grimes's claims that Defendants violated Articles 27, 150 and 151 of the Maryland Declaration of Rights, which while not expressly cited in either Count III or IV, will nonetheless be dismissed on the same grounds.

17